FILED
FEB 0 4 2015
[signature] CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MED-STAR PARAMEDIC AMBULANCE, INC., <br><br> Plaintiff, <br> v. <br><br> CITY OF SIOUX FALLS and SIOUX FALLS REGIONAL EMERGENCY MEDICAL SERVICES AUTHORITY, <br><br> Defendants. | Civ. No. 15-4045 <br><br> COMPLAINT <br><br> JURY TRIAL DEMANDED |

Comes now Plaintiff, Med-Star Paramedic Ambulance, Inc. ("Plaintiff" or "Med-Star"), and for its Complaint against Defendants, City of Sioux Falls ("City") and Sioux Falls Regional Emergency Medical Services Authority ("REMSA") (collectively, "Defendants"), hereby states and alleges as follows:

## PARTIES

1. Med-Star is a South Dakota corporation with a principal place of business in Brandon, South Dakota.

2. City is a first-class municipal corporation and a home-rule municipality in the State of South Dakota.

3. Upon information and belief, REMSA is a municipal corporation or an unincorporated municipal association located within Minnehaha and/or Lincoln Counties, South Dakota.

## JURISDICTION AND VENUE

4. The Court has exclusive jurisdiction over Plaintiff's Sherman Act claims pursuant to 15 U.S.C. § 4.

5. The Court has jurisdiction over Plaintiff's 42 U.S.C. § 1983 claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

6. The Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as the state law claims are so related to Plaintiff's claims giving the Court original jurisdiction in this case that the state law claims form part of the same case or controversy.

7. Venue for this suit lies in the United States District Court for the District of South Dakota, Southern Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims alleged herein occurred within the Southern Division of the District of South Dakota as more specifically set forth below.

## FACTUAL BACKGROUND

8. Med-Star is a South Dakota company, which has been providing ambulance services in the Sioux Falls region since 2000.

9. Med-Star is currently licensed by the State of South Dakota, the City of Brandon, South Dakota, and Minnehaha County, South Dakota to provide emergency and non-emergency ambulance services and transfers.

10. Defendants have refused to provide Med-Star with a license to provide any ambulance services within the City limits.

11. Med-Star's South Dakota contracts include but are not limited to the following: contracts with Minnehaha County, the State Penitentiary, the Veteran's Administration, ground transport for medical flight patients, back-up services for Valley Springs, South Dakota, and full-scale ambulance services in the City of Brandon and approximately 100 square miles between Brandon and the Minnesota and Iowa borders.

### The City's Enforcement of City Ordinance § 124.081 and the Rural/Metro Contract

12.     In 2007, Defendants entered into an exclusive contract with Rural/Metro Corporation ("Rural/Metro") for the provision of 911 or emergency ambulance services and transfers within the City's limits (collectively, "emergency services") and non-emergency ambulance services and transfers with the City's limits (collectively, "non-emergency transfers") ("Rural/Metro Contract").

13.     Defendants never provided an opportunity for any other ambulance services provider, including Med-Star, to bid on the Rural/Metro Contract executed in 2007.

14.     Upon information and belief, the City does not pay Rural/Metro for services provided under the Rural/Metro Contract. Maximum prices Rural/Metro may charge for both emergency services and non-emergency transfers are set forth in the Rural/Metro Contract. Payment for the provision of services provided by Rural/Metro are made directly to Rural/Metro by the patient or the party paying on behalf of the patient, such as insurance providers, Medicare, Medicaid, etc.

15.     Both before and after Defendants executed the Rural/Metro Contract, Med-Star received requests from private hospitals, nursing homes, medical facilities, City residents, etc. to provide non-emergency transfers within the City limits.

16.     Defendants have prohibited Med-Star since its inception from providing certain non-emergency transfers within City limits, including but not limited to non-emergency transfers between a nursing home facility and a private hospital or between hospitals.

17.     The City, however, used to permit Med-Star to provide certain non-emergency transfers in the City limits, namely for patients of the Avera McKennan Hospital & University

3

Health Center ("Avera") who needed to be transferred from one Avera facility to another for x-rays and other diagnostic services ("in-patient transfers").

18. Med-Star had a contract and/or understanding with Avera that Med-Star would complete at least some of these in-patient transfers ("Avera contract").

19. Med-Star began providing in-patient transfers for Avera in about 2007 and continued providing those in-patient transfers until on or about June of 2011.

20. Beginning on or about June of 2011, Defendants sent multiple warning letters to Med-Star stating that Med-Star's in-patient transfers of Avera patients violated the City Ordinances, including but not limited to City Ordinance § 124.081, and the exclusive franchise awarded to Rural/Metro via the Rural/Metro Contract.

21. City Ordinance § 124.081 provides as follows: "The city shall grant an exclusive franchise for providing ground ambulance services within the city as the official policy and regulatory scheme of the city for ground ambulance services."

22. Defendants further stated that Med-Star could only perform "intra-facility" transports for Avera, if the following conditions were met: (1) the patients were never discharged; (2) the patients were transported between two facilities, both of which Avera owned; (3) the facilities shared the same tax identification number; and (4) the transport appeared on one bill for the patient.

23. After receiving the warning letters, and for fear of being fined by Defendants for allegedly violating City Ordinances, Med-Star stopped providing the in-patient transfers for Avera.

24. Med-Star has continued to receive requests by private hospitals, nursing homes, medical facilities, City residents, etc. to provide both in-patient and other non-emergency

transfers, but has been forced to refuse these requests due to the City's warnings that such services were in violation of City Ordinance § 124.081.

25. Med-Star has lost profits due to Defendants' prohibition on Med-Star providing non-emergency transfers, including but not limited to in-patient transfers for Avera.

**Defendants' Refusal to Approve Med-Star's Mutual Aid Agreements with Rural/Metro**

26. Ambulance service providers sometimes enter into mutual aid agreements, whereby an ambulance services company which does not have a contract with a municipality agrees to assist a company which does have a contract with the municipality for the provision of overflow or back-up ambulance services. The purpose of these mutual aid agreements is to ensure that the contracted provider is able to satisfy its obligations under the contract to provide the ambulance services required by the contract, even in times when the demand for ambulance services is abnormally high or the contracted provider is unable to perform the services on its own.

27. In 2009, Med-Star and Rural/Metro created an EMS Mutual Aid Agreement with Rural/Metro whereby Med-Star would assist Rural/Metro with the provision of certain ambulance services ("Mutual Aid Agreement").

28. Med-Star requested that Defendants approve the 2009 Mutual Aid Agreement.

29. Defendants refused to approve the 2009 Mutual Aid Agreement.

30. In 2012, Med-Star and Rural/Metro created a second Mutual Aid Agreement.

31. Med-Star requested that Defendants approve the 2012 Mutual Aid Agreement.

32. Defendants refused to approve the 2012 Mutual Aid Agreement.

33. Due to Defendants' refusal to approve either the 2009 or 2012 Mutual Aid Agreements, Med-Star did not provide any services under either the 2009 or 2012 Mutual Aid

DOCS-#4457755-v4

Agreements, and did not earn any profit under either the 2009 or 2012 Mutual Aid Agreements.

### Defendants' Intent to Award an Exclusive Contract to Paramedics Plus

34. The Rural/Metro Contract expires in May of 2015.

35. Defendants engaged in a request for proposal process to select the next ambulance services provider for the City.

36. On July 18, 2014, Defendants released the Request for Proposal for Surface Ambulance Services, No. 14-0116 ("RFP").

37. The RFP sets an exclusive operating area for both emergency services and non-emergency transfers within City limits.

38. Med-Star submitted a proposal pursuant to the RFP.

39. Three other companies also submitted proposals, including Rural/Metro, American Medical Response, Inc., and Paramedics Plus, LLC, an organization of the East Texas Medical Center Regional Healthcare System ("Paramedics Plus").

40. All four of the bidders met the minimum necessary requirements in order for their bids to be considered, meaning that the City found all four ambulance service providers met certain quality requirements to provide ambulance services for the City.

41. On October 30, 2014, Defendants presented a Notice of Intent to Award the contract to Paramedics Plus.

42. Defendants have presented new ordinances to the City Council for the City of Sioux Falls ("City Council") relating to ambulance services ("2015 Ordinances").

43. The 2015 Ordinances had their first reading at the City Council meeting on February 2, 2015. A true and correct copy of the 2015 Ordinances as read on February 2, 2015, is attached and incorporated herein as **Exhibit A**.

44. The 2015 Ordinances will have a second reading before the City Council on February 10, 2015. At that time, the City Council will vote on whether to adopt the 2015 Ordinances and authorize Defendants to execute the contract with Paramedics Plus.

45. The 2015 Ordinances confirm that Defendants will grant an exclusive contract to Paramedics Plus for emergency services and non-emergency transfers within City limits: "WHEREAS, that the City has found that granting an exclusive franchise for providing surface ambulance transport services within the city is the official policy and regulatory scheme of the City, pursuant to Section 124.081 of the Code of Ordinances of Sioux Falls, South Dakota[.]" *See* **Ex. A**.

46. Defendants have already negotiated a contract with Paramedics Plus ("Paramedics Plus Contract"), even though Defendants' ordinances prohibit Defendants from taking any action while an administrative appeal is pending (discussed below). A true and correct copy of the Paramedics Plus Contract as published by the City, but without the voluminous and irrelevant exhibits, is attached and incorporated herein as **Exhibit B**.[1]

47. The Paramedics Plus Contract is an exclusive contract for the provision of all emergency services and non-emergency transfers within the City limits: "WHEREAS, pursuant to the City of Sioux Falls' Surface Ambulance Regulatory Ordinances codified in Sections 124.080 and 124.081 of the Code of Ordinances of Sioux Falls, SD (the 'Ordinance'), SDCL 34-11-1, and Section 2.12 of the City Charter, the City is authorized to grant an exclusive Franchise Agreement to operate a Surface Ambulance Transport Service." **Ex. B** at p. 1.

---

[1] The entire Paramedics Plus Contract, including the exhibits, can be found under the Agenda for the February 2, 2015, City Council meeting, available at http://www.siouxfalls.org/council/view-meetings.aspx.

7

48.     Upon information and belief, Defendants' past conduct, and the terms of the 2015 Ordinances and the Paramedics Plus Contract, Med-Star believes that Defendants will continue to prohibit Med-Star from providing any emergency services or non-emergency transfers within City limits.

## Med-Star Exhausted its Administrative Remedies

49.     On November 12, 2014, pursuant to the RFP and the City's administrative appeals process, Med-Star submitted its protest to the RFP process ("Protest").

50.     On December 5, 2014, the City denied Med-Star's Protest.

51.     On December 18, 2014, pursuant to the RFP and the City's administrative appeals process, Med-Star appealed the City's denial of Med-Star's Protest.

52.     Hearing Examiner Michele Crissman held a hearing on Med-Star's administrative appeal on January 8, 2015.

53.     On January 23, 2015, Hearing Examiner Crissman denied Med-Star's appeal. She limited her decision to the four areas addressed in Med-Star's November 12, 2014 Protest, and did not decide any issues related to Med-Star's argument that the issuance of an exclusive contract violates state and federal antitrust laws and Med-Star's constitutional rights.

54.     Pursuant to SDCL Ch. 1-26 and City of Sioux Falls Ordinance § 30.046, Med-Star appealed Hearing Examiner Crissman's decision in an action entitled *Med-Star Paramedic Ambulance, Inc. v. City of Sioux Falls*, Civ. 15-284 (Second Judicial Circuit, Minnehaha County) ("State Court Action").

55.     The State Court Action raises different legal issues than those presented here. Further, the state court does not have jurisdiction to hear Med-Star's Sherman Act claims.

56.     Defendants have refused to stay action on the Paramedics Plus Contract or the

2015 Ordinances, despite City Ordinance § 30.046's prohibition on taking any action while an administrative appeal is pending.

## COUNT 1: VIOLATION OF SDCL 37-1-3.1

### (Unlawful Restraint of Trade)

57. Med-Star realleges the above-stated paragraphs as if fully set forth herein.

58. Defendants' participation in and enforcement or anticipated enforcement of the Rural/Metro Contract, Paramedics Plus Contract, City Ordinance § 124.081, the 2015 Ordinances; Defendants' refusal to approve the 2009 Mutual Aid Agreement and/or the 2012 Mutual Aid Agreement; and/or Defendants' prohibition against Med-Star performing ambulance services under the Avera contract or performing other ambulance services within the City are all unlawful restraints of trade and/or commerce within the State of South Dakota.

59. As a result of Defendants' actions, Med-Star has sustained damages and will continue to sustain damages.

60. Med-Star is entitled to equitable, including but not limited to injunctive, relief.

61. Med-Star is entitled to treble damages.

## COUNT 2: VIOLATION OF SDCL 37-1-3.2

### (Unlawful Monopoly)

62. Med-Star realleges the above-stated paragraphs as if fully set forth herein.

63. Defendants entered into the Rural/Metro Contract.

64. Defendants prohibited Med-Star from completing non-emergency transfers within City limits, including but not limited to in-patient transfers with Avera.

65. Defendants prohibited Med-Star from performing or earning any profit under the either the 2009 Mutual Aid Agreement or the 2012 Mutual Aid Agreement.

9

66. Defendants have noticed an intent to adopt the 2015 Ordinances and enter into the Paramedics Plus Contract.

67. Defendants have been enforcing City Ordinance § 124.081.

68. Upon information and belief and Defendants' past conduct, Defendants will continue prohibiting Med-Star from providing any emergency services or non-emergency transfers within the City limits once the Paramedics Plus Contract is signed.

69. The Rural/Metro Contract, Paramedics Plus Contract, City Ordinance § 124.081, the 2015 Ordinances, and/or enforcement of the same are an unlawful monopolization and/or attempt to monopolize trade and/or commerce within the State of South Dakota.

70. Defendants' prohibition against Med-Star performing the Avera contract is an unlawful monopolization and/or attempt to monopolize trade and/or commerce within the State of South Dakota.

71. Defendants' refusal to approve the 2009 Mutual Aid Agreement and/or the 2012 Mutual Aid Agreement is an unlawful monopolization and/or attempt to monopolize trade and/or commerce within the State of South Dakota.

72. As a result of Defendants' actions, Med-Star has sustained damages and will continue to sustain damages.

73. Med-Star is entitled to equitable, including but not limited to injunctive, relief.

74. Med-Star is entitled to treble damages.

### COUNT 3: SHERMAN ACT, 15 U.S.C. § 1

### (Unlawful Restraint of Trade)

75. Med-Star realleges the above-stated paragraphs as if fully set forth herein.

76. The Rural/Metro Contract, Paramedics Plus Contract, City Ordinance § 124.081,

the 2015 Ordinances, and/or enforcement of the same unreasonably restrain trade and/or competition.

77. Defendants' prohibition against Med-Star performing the Avera contract and providing any ambulance services within City limits, and their refusal to approve the 2009 Mutual Aid Agreement, and/or the 2012 Mutual Agreement unreasonably restrains trade and/or competition.

78. Defendants' above-stated actions affect interstate commerce.

79. As a result of Defendants' actions, Med-Star has sustained damages and will continue to sustain damages.

80. Med-Star is entitled to damages, treble damages, attorneys' fees, and prejudgment interest for Defendants' actions.

81. Defendants, unless restrained, will enter into the Paramedics Plus Contract; adopt the 2015 Ordinances; enforce City Ordinance § 124.081; and/or prohibit Med-Star from competing for the provision of emergency services and/or non-emergency transfers within the City. As such, Med-Star is entitled to injunctive relief pursuant to 15 U.S.C. § 26.

## COUNT 4: SHERMAN ACT, 15 U.S.C. § 2

### (Unlawful Monopoly)

82. Med-Star realleges the above-stated paragraphs as if fully set forth herein.

83. The Rural/Metro Contract, Paramedics Plus Contract, City Ordinance § 124.081, the 2015 Ordinances, and/or enforcement of the same is a monopolization or attempt to monopolize trade and/or competition.

84. Defendants' prohibition against Med-Star performing the Avera contract and providing any ambulance services within City limits, and their refusal to approve the 2009

Mutual Aid Agreement and/or the 2012 Mutual Agreement constitutes a monopolization and/or attempt to monopolize trade and/or competition.

85. Defendants' above-stated actions affect interstate commerce.

86. As a result of Defendants' actions, Med-Star has sustained damages and will continue to sustain damages.

87. Med-Star is entitled to damages, treble damages, attorneys' fees, and prejudgment interest for Defendants' actions.

88. Defendants, unless restrained, will enter into the Paramedics Plus Contract; adopt the 2015 Ordinances; enforce City Ordinance § 124.081; and/or prohibit Med-Star from competing for the provision of emergency services and/or non-emergency transfers within the City. As such, Med-Star is entitled to injunctive relief pursuant to 15 U.S.C. § 26.

**COUNT 5: VIOLATION OF SUBSTANTIVE DUE PROCESS, 42 U.S.C. § 1983**

89. Med-Star realleges the above-stated paragraphs as if fully set forth herein.

90. Med-Star has fundamental rights to property, liberty, and/or the right to compete in business.

91. Defendants violated these constitutional rights including but not limited to taking the following actions; executing and enforcing the Rural/Metro Contract; adpoting and/or enforcing City Ordinance § 124.081; prohibiting Med-Star from performing under the Avera contract or providing other ambulance services within the City limits; refusing to approve the 2009 Mutual Aid Agreement; and/or refusing to approve the 2012 Mutual Aid Agreement.

92. If they are not enjoined, Defendants will violate Med-Star's constitutional rights by enacting the 2015 Ordinances; executing the Paramedics Plus Contract; and/or enforcing the same.

93. The above-stated conduct by Defendants is arbitrary, capricious, and shocks the conscience.

94. As a result of Defendants' actions, Med-Star has sustained damages and will continue to sustain damages.

95. Med-Star is entitled to equitable, including but not limited to injunctive, relief.

## COUNT 6: VIOLATION OF EQUAL PROTECTION UNDER 42 U.S.C. § 1983

96. Med-Star realleges the above-stated paragraphs as if fully set forth herein.

97. Defendants have intentionally treated Med-Star differently from others similarly situated.

98. No rational basis exists for this difference in treatment.

99. Additionally, Med-Star has a fundamental right to liberty, property, and/or the right to compete in business.

100. Defendants deprived Med-Star of Med-Star's fundamental rights.

101. As a result of Defendants' actions, Med-Star has sustained damages and will continue to sustain damages.

102. Med-Star is entitled to equitable, including but not limited to injunctive, relief.

## COUNT 7: CONSPIRACY TO DEPRIVE MED-STAR OF ITS CONSTITUTIONAL RIGHTS 42 U.S.C. § 1985

103. Med-Star realleges the above-stated paragraphs as if fully set forth herein.

104. Defendants engaged in a conspiracy with the purpose of depriving Med-Star, either directly or indirectly, of its constitutional rights.

105. Defendants have taken multiple acts in furtherance of this conspiracy, including but not limited to prohibiting Med-Star from performing under the Avera contract; refusing to

approve the 2009 Mutual Aid Agreement; refusing to approve the 2012 Mutual Aid Agreement; enforcing City Ordinance § 124.081; noticing an intent to enter into the Paramedics Plus Contract; and/or noticing an intent to adopt the 2015 Ordinances.

106. Med-Star has been injured in its property and liberty interests and deprived its constitutional rights by Defendants' actions.

107. Med-Star is entitled to equitable, including but not limited to injunctive, relief.

### COUNT 8: TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

108. Med-Star realleges the above-stated paragraphs as if fully set forth herein

109. Med-Star had and continues to have business relationships with private hospitals, medical facilities, City residents, etc. ("private parties") to provide emergency services and/or non-emergency transfers within the City, including but not limited to Med-Star's contract with Avera, the 2009 Mutual Aid Agreement, and/or the 2012 Mutual Aid Agreement.

110. Defendants knew of these business relationships or should have known of the relationships.

111. Defendants have intentionally and unjustifiably interfered with these business relationships by, among other actions, prohibiting Med-Star from performing its contract with Avera, refusing to approve the 2009 Mutual Aid Agreement, refusing to approve the 2012 Mutual Aid Agreement, enforcing City Ordinance § 124.081, proposing to adopt the 2015 Ordinances, and/or noticing an intent to enter into the Paramedics Plus Contract.

112. As a result of Defendants' conduct, Med-Star has been damaged and harmed.

113. Med-Star is entitled to equitable, including but not limited to injunctive, relief.

### COUNT 9: TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY

114. Med-Star realleges the above-stated paragraphs as if fully set forth herein.

14

115. Med-Star had and continues to have a valid expectancy of business with private parties to provide emergency services and/or non-emergency transfers within the City, including but not limited to Med-Star's contract with Avera, the 2009 Mutual Aid Agreement, and/or 2012 Mutual Aid Agreement.

116. Defendants knew that Med-Star expected or intended to enter into business relationships with private parties or should have known of Med-Star's expectation or intent to do so.

117. Defendants' conduct has intentionally and unjustifiably interfered with these business relationships by, among other actions, prohibiting Med-Star from performing its contract with Avera, refusing to approve the 2009 Mutual Aid Agreement, refusing to approve the 2012 Mutual Aid Agreement, proposing to adopt the 2015 Ordinances, enforcing City Ordinance § 124.081, and/or noticing an intent to enter into the Paramedics Plus Contract.

118. Defendants' interference was the proximate cause of the harm sustained by Med-Star.

119. As a result of Defendants' conduct, Med-Star has been damaged and harmed.

120. Med-Star is entitled to equitable, including but not limited to injunctive, relief.

### COUNT 10: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

121. Med-Star realleges the above-stated paragraphs as if fully set forth herein

122. Med-Star had a valid contractual relationship with Avera.

123. Defendants knew of this contractual relationship or should have known of the relationship.

124. Defendants' conduct in prohibiting Med-Star from providing services pursuant to

its contract with Avera were intentional and unjustified acts of interference, all of which were improper.

125. Med-Star also had a valid contractual relationship with Rural/Metro under the 2009 Mutual Aid Agreement, and/or the 2012 Mutual Aid Agreement.

126. Defendants knew of this contractual relationship or should have known of the relationship.

127. Defendants' conduct in refusing to approve the 2009 Mutual Aid Agreement and/or the 2012 Mutual Aid Agreement constituted intentional and unjustified acts of interference, all of which were improper.

128. As a result of Defendants' conduct, Med-Star has been damaged and harmed.

129. Med-Star is entitled to equitable, including but not limited to injunctive, relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court granting the following relief to Plaintiff:

A. For a preliminary and permanent injunction prohibiting Defendants from entering into any exclusive contract with any ambulance provider including but not limited to the contract with Paramedics Plus;

B. For a preliminary and permanent injunction prohibiting Defendants from adopting the 2015 Ordinances;

C. For a preliminary and permanent injunction prohibiting Defendants from enforcing City Ordinance § 124.081;

D. Judgment against Defendants on all Counts alleged herein;

16

E. For an amount of monetary damages, including but not limited to future damages and/or treble damages as allowed under application law, to be proven during trial;

F. For an award of attorneys' fees, costs, disbursements, and interest as allowed under applicable law; and

G. For such other and further relief, including but not limited to equitable relief and future damages, as the Court deems just and equitable.

Dated this 4th day of February, 2015.

LINDQUIST & VENNUM LLP

By /s/ Daniel R. Fritz
Daniel R. Fritz
Nicole O. Tupman
101 S. Reid Street, Suite 302
Sioux Falls, SD 57103
Phone: 605-978-5200
Email: dfritz@lindquist.com
   ntupman@lindquist.com

*Attorneys for Plaintiff*

17